[No. 1781, November 16, 1915.]
STATE v. CARTER.

SYLLABUS BY THE COURT.

1. The general rule upon the subject of cross-examination of witnesses is that such examination can only relate to facts and circumstances connected with the matter stated in the direct examination of the witness.

P. 170

2. It is recognized that from the necessity of the case the method and extent of the cross-examination must depend very largely upon the discretion of the trial judge; and this is especially true where the object is to test the accuracy and credibility of the witness.

P. 170

3. For the purpose of testing the credibility of a witness, it is permissible to investigate the situation of the witness with respect to the parties and to the subject of litigation, his interest, his motives, inclinations, and prejudices, his

means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory, and description.

P. 170

4. Questions propounded to a witness on cross-examination as to what another witness had testified at a preliminary hearing in the cause was not proper cross-examination, and cannot be justified upon the theory of testing the accuracy and credibility of a witness.

P. 171

Appeal from District Court, Curry County; Richardson, Judge.

Wilkie Carter was convicted of unlawfully playing a game of chance, and appeals. Reversed and remanded for new trial.

JAMES A. HALL of Portales, for appellant.

Error to permit cross-examination of witness Joiner on subject concerning what another absent witness said.

Spencer v. Commonwealth, 107 S. W. 342; Underhill Crim. Ev., sec. 220; Wharton Crim. Ev., sec. 484; State v. Sheppard, 59 N. W. 449; Walton v. State, 55 S. W. 567; Crittenden v. Commonwealth, 82 Ky. 164, 6 Am. Crim. Rep. 200; Johnson v. State, 22 Tex. App. 208; Hildeburn v. Curran, 65 Pa. 59.

H. S. BOWMAN, Assistant Attorney General, for the State.

Evidence produced by cross-examination of witness Joiner was relevant for purpose of testing accuracy and integrity of witness. Rule as to collateral or irrelevant testimony on cross-examination stated in 2 Wigmore on Ev., p. 1151.

As to scope of cross-examination for ascertaining accuracy or credibility of witness, see:

Borrego v. Territory, 8 N. M. 446, 480; Wigmore on Evidence, vol. II, p. 1081, sec. 944; Jones Commentaries on Evidence, vol. 5, pp. 162-167, sec. 823; Stevens v. Beach, 12 Vt. 587; Perkins v. Adams, 5 Metc. (Mass.) 48; Hathaway v. Crocker, 7 Metc. 266; La Beau v. The People, 34 N. Y. 223; Langley v. Wadsworth, 99 N. Y. 63, 1 N. E. 106; Boles v. The State, 46 Ala. 204; Ordway v. Haynes, 50 N. H. 159; McFarlin v. The State, 41 Tex. 23; People v. Morrigan et al., 28 Mich. 4.

Test of collateral matter:
2 Wigmore on Ev., p. 1161.

### OPINION OF THE COURT.

HANNA, J.—Wilkie Carter was indicted at the September, 1914, term of the district court of Curry county, charged with violation of the New Mexico anti-gambling act. He was convicted upon the first count of the indictment, which charged the unlawful playing of a game of chance, viz., shaking dice for money, from which conviction he prayed, and was granted an appeal to this court.

The only assignment of error which we find it necessary to consider is the first, which was based upon the action of the trial court in permitting the district attorney, over the objection of the defendant, to propound to one of the witnesses for the defense, Ed. Joiner, while on cross-examination, certain questions which related to testimony which it is alleged had been given by a state witness, one A. C. Burke, at a preliminary hearing of this cause. We do not deem it necessary to set out all the questions which were propounded to this witness under cross-examination. Several of them had reference to the preliminary examination, without calling for an answer as to what the state's witness had testified, but only referring to what had occurred at that time and place, as, for example, whether or not, in the course of the witness' examination, he had pointed out the witness Joiner as one of the men that had

shaken dice with him. Most of the questions, however, were directed to the testimony given by the witness Burke at the preliminary hearing, as, for example, when the witness was asked:

"State whether or not he [referring to Burke] was asked this question, 'State whether or not Mr. Carter and Mr. Joiner threw dice then for money,' and if he didn't give this answer, 'Yes.' "

Witness was also asked to state whether or not this question was asked him (again referring to Burke):

"'Go ahead and state what else occurred,' and did he not make this answer, 'They asked me to get in the game, and I did.' Did he give that testimony?"

Again, this question was propounded to the witness Joiner:

"Was this question asked him at that trial at that place: 'Who asked you to get in the game?' And did he not give this answer, 'This gentleman over this way.' And he was further asked, Question: 'Mr. Carter, the defendant?' and did he not give this answer, 'Yes, sir?' "

"Did he testify against Wilkie Carter?" and "Did he testify as I have read you here?" were further questions addressed to the witness under cross-examination.

In connection with this assignment of error, appellant directs our attention to the fact, which is borne out by the record, that a purported transcript of the testimony of the witness A. C. Burke at the preliminary hearing in this cause was offered in evidence by the state as a part of its case in chief, and upon objection of the defendant was excluded. It is contended by the appellant that this reference to the alleged testimony of an absent witness was highly prejudicial to the cause of the defendant, which cannot be justified upon any theory as to the limits of cross-examination, which prejudice was not corrected by the attempted limitation of the effect of the evidence to the laying of a predicate for impeachment; the court having attempted to so limit the evidence in question by his instruction No. 16.

It is too clear for argument that the reference to the testimony of the absent witness, Burke, cannot be justified upon any theory of laying a predicate for impeachment of the witness Joiner. The only theory upon which the admission of the evidence in question could be justified is that adopted by the Attorney General, who argues that the evidence was admissible for the purpose of testing the accuracy and integrity of the witness Joiner. We cannot, however, see the application of this principle to the facts of this case. What the witness Burke may have testified in the preliminary hearing as to the defendant engaging in the gambling game in question and inviting him to do so would have to do with the accuracy and integrity of the testimony of the witness Joiner is something we cannot discover. At most, it would point out a conflict of the testimony of the witness Joiner and the testimony of the absent witness, Burke, as given at the preliminary hearing. This might be said in theory to point to impeachment, but impeachment cannot be permitted in any such indiscriminate manner.

[1-3] The general rule upon the scope of cross-examination, sometimes called the American rule, is that the examination can only relate to the facts and circumstances connected with the matters stated in the direct examination of the witness. 5 Jones' Commentaries on Evidence, § 820. This general rule, like many others, is not without qualification, and, as stated by the same author in section 821 of his work:

"All matters that may modify, explain, contradict, rebut, or make clear the facts testified to in chief by the witness may be gone into on cross-examination."

This modification of the rule will, of course, frequently lead the examiner outside the field of the direct examination, and, as pointed out by the same author in the same section:

"When this field has been covered by the cross-examiner, the right, as an abstract right, to further cross-examine, ceases."

State v. Carter, 21 N. M. 166.

And further cross-examination of the witness is to be permitted only when the necessity therefor is apparent in the opinion of the trial court, in whom is vested a discretion in passing upon the matter. The discretion of the court in the matter of controlling the cross-examination of the witness, as pointed out by Mr. Jones in section 842 of his work, is such that it is obvious no rule can be framed for the guidance of judges as to the mode and extent of cross-examination. As there stated:

"Much may depend upon the demeanor of counsel and his method of testing the witness. And, finally, the nature and circumstances of the case itself may be the most potent reasons for permitting or overruling a question."

Again, as pointed out by this author:

"It is recognized that from the necessity of the case the method and extent of the cross-examination must depend very largely upon the discretion of the trial judge; and this is especially true where the object is to test the accuracy and credibility of the witness."

See, also, 1 Wharton's Crim. Ev. § 475, and Underhill on Criminal Evidence, § 221.

A broader qualification of the general rule as to the limits of cross-examination is given by Mr. Jones in his Commentaries on Evidence, at section 826, in the following language:

"While the party who produces a witness vouches for his credibility, the cross-examiner sustains no such relation to the witness. He is at liberty, and is often compelled, to attack the credibility of the witness, and, for that purpose, must be allowed wide latitude in asking questions which would otherwise be wholly irrelevant to the issue. For the purpose of testing the credibility of a witness, it is permissible to investigate the situation of the witness with respect to the parties and to the subject of litigation, his interest, his motives, inclinations, and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory, and description."

[4] Applying the foregoing rules to the facts of this case, can it be said that the reference to the alleged testimony of the witness Burke at the preliminary hearing

was admissible as a test of the accuracy and credibility of the witness Joiner? We think not, but that, on the contrary, the cross-examination of the witness Joiner was permitted to proceed beyond the bounds which are proper to test the accuracy and credibility of a witness, with the sole purpose in view, so far as the record discloses, of bringing about the presentation to the jury of the evidence of the absent witness, which evidence had been excluded, and was clearly inadmissible under the conditions applying to its tender.

We can see no ground for the contention that the cross-examination of the witness Joiner in the respects pointed out would throw any light upon the connection of that witness with the parties or the subject of the litigation, his bias, motive, means of obtaining a correct or certain knowledge of the facts, or otherwise have bearing upon his credibility, or indicate any fact which would tend to make the examination in question permissible, or bring the same within the exceptions to the general rule as to the limits of cross-examination.

It is our conclusion that questions propounded to a witness on cross-examinatin as to what another witness had testified at a preliminary hearing in the cause was not proper cross-examination, and could not be justified upon the theory of testing the accuracy and credibility of a witness.

But one other phase of the matter calls for any consideration, in our opinion, which is whether the admission of the testimony complained of was prejudicial to the case of defendant by reason of the fact that the court limited its effect by his instruction No. 16 to the sole purpose of laying a predicate for impeachment. It has been held that "testimony that is illegal can be limited to no purpose in the case." Walton v. State, 41 Tex. Cr. R. 454, 55 S. W. 566. And, while this holding may not be conclusive upon the determination of this question, nevertheless, we believe that the introduction of this evidence, clearly incompetent, was so prejudicial to the rights of the defendant that it cannot be said to have been cured

by the limitation of its application as was attempted in the instruction of the court referred to.

For the reasons stated, the judgment of the trial court must be reversed, and the cause remanded for a new trial; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.